**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-02074-MSK-KMT

**MIKHAIL MATS,**

      Plaintiff,

v.

**JACOB MAZIN,**

      Defendant.

_____

**OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion to Dismiss **(# 12)** the third and fourth claims for relief, the Plaintiff's response **(# 18)**, and the Defendant's reply **(# 19)**.

**FACTS**

According to the Amended Complaint **(# 9)**, Defendant Mazin and others solicited Plaintiff Mats to invest money in a business venture with them in Longmont, Colorado. After negotiations resulted in an agreement, Mr. Mats wired a total of $ 79,800 in capital contributions to certain entities owned by or affiliated with Mr. Mazin. When the time came to open the Longmont business, Mr. Mazin informed Mr. Mats that administrative difficulties prevented the business from operating, but offered Mr. Mats the opportunity to transfer his investment to a different business that Mr. Mazin was currently operating in Boulder, Colorado. Mr. Mazin represented that the Boulder business had no immediate geographic competitors and produced

1

some $25,000 per month in revenue. Mr. Mats agreed to invest in the Boulder business and arranged to contribute an additional $ 60,000 in capital, again wiring the funds to the businesses themselves. Upon beginning work in the Boulder business, Mr. Mats discovered that various representations Mr. Mazin had made about the business were untrue and that the business was undercapitalized. Shortly thereafter, Mr. Mazin changed the locks on the Boulder business, essentially excluding Mr. Mats from involvement with it.

Mr. Mats asserts five claims for relief: (i) "fraud in the inducement," which the Court understands to be a claim for recission of the agreement(s) that Mr. Mats entered into with Mr. Mazin; (ii) fraudulent concealment, on essentially the same facts; (iii) civil theft in violation of C.R.S. § 18-4-405, in that Mr. Mazin "obtained and exercised control by deception" over Mr. Mats' capital contributions; (iv) as an alternative to claim (iii), Mr. Mazin "aiding and abetting" civil theft by his other business partners in the venture; and (v) civil conspiracy.

Mr. Mazin moves (# 12) to dismiss the civil theft/aiding and abetting claims, arguing that the Amended Complaint states that Mr. Mats' capital contributions were made to specific business entities and Mr. Mats has not alleged that Mr. Mazin has any ownership interest in or ability to control those entities, and that as a result, Mr. Mazin cannot be said to have taken control over the capital contributions for purposes of the civil theft statute.[1] Mr. Mazin further

---

[1] The Court emphasizes that it is limiting its analysis of the civil theft claims to the precise issues raised by Mr. Mazin's motion – namely, whether the Amended Complaint adequately alleges facts that would show that Mr. Mazin has actual possession of property (the capital contributions) of Mr. Mats. In doing so, the Court is not addressing a variety of additional factual or legal issues that might arguably be implicated by Mr. Mats' theory of the civil theft claims. Among these are interesting questions such as whether Mr. Mats' contribution of the capital constituted his relinquishment of any property interest in the funds themselves; whether the investment capital can be said to be discrete and traceable property thereafter passing into the hands of Mr. Mazin; and whether the economic loss rule might bar Mr. Mats from recovering in

argues that no Colorado precedent recognizes the theory of "aiding and abetting" civil theft as alleged in the fourth claim.

In response **(# 18)**, Mr. Mats argues that the Amended Complaint adequately alleges that although the capital contributions were made the other entities, it also alleges that Mr. Mats ultimately obtained control over the funds. He also argues that Colorado precedent supports the conclusion that aiding and abetting liability exists for civil theft claims.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), described the standard that must be met as "facial plausibility." In this context, "plausibility" refers to the scope and degree of specificity of the allegations in the complaint. *Khalik v. United Air Lines*, ___ F.3d ___, 2012 WL 364058 (10th Cir. Feb. 6, 2012). Although Fed. R. Civ. P. 8(a)(2) still requires the pleader to supply only "a short and plain statement of the claim," that statement must provide more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or generalized allegations of conduct that "encompass a wide swath of conduct, much of it innocent." *Id.* In this regard, the plaintiff must do more than articulate a set of facts that could

---

civil theft.

"conceivabl[y]" or "possibly" give rise to a claim; he must "nudge[ ] his claims across the line from conceivable to plausible." *Id.* Of course, the degree of specificity that will be required will necessarily vary based on the context of the case. *Id.*

### B. Civil theft

C.R.S. § 18-4-405 provides that "the owner [of property obtained by theft, robbery, or burglary] may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property." To plead a claim for civil theft, Mr. Mats must allege facts showing that: (i) Mr. Mazin knowingly obtained control over his property without authorization; and (ii) that he did so with the specific intent to permanently deprive Mr. Mats of the benefit of the property. *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009). A conversion may occur where a person takes another's property without authorization, or where the person, via deception, obtains the owner's authorization to take the property. *West v. Roberts*, 143 P.3d 1037, 1040 (Colo. 2006). Alternatively, the statute provides that Mr. Mats can maintain a civil theft action against Mr. Mazin if Mr. Mazin is in actual possession of property taken by theft from Mr. Mats, even if Mr. Mazin is not necessarily the alleged thief. *Id.*

Notably, Mr. Mats' response to the motion does not defend the claim (or, at the very least, offers only a perfunctory defense) on the grounds that the Amended Complaint alleges Mr. Mazin to be the "taker" of the property. He offers no material analysis of what is necessary to allege that someone is a "taker" of property, much less how such concept applies in a situation where property is voluntarily (albeit as a result of deception) delivered by the alleged victim to the alleged perpetrator. Rather, the response focuses entirely on the fact that Mr. Mazin is in

actual possession of the capital contributions – *i.e.* he "ultimately obtained" and "wound up with the money." Accordingly, the Court limits its analysis to the question of whether the Amended Complaint adequately alleges that Mr. Mazin is liable under the civil theft statute as a person in actual possession of Mr. Mats' capital contributions.

The Amended Complaint contends that Mr. Mats made his capital contributions to certain entities that are "wholly owned entities" of Mr. Mazin and another individual, non-party David Mazin. The Amended Complaint goes on to allege that, after Mr. Mats deposited the capital in the entities, "the Mazins and Entities, for their collective and/or individual benefit, retained those funds." Although such an allegation is both somewhat vaguely stated as alternatives and borders on the conclusory, it is susceptible to an interpretation that Mr. Mazin himself "retained those funds." The Court cannot say that, given the particular context of this case, Fed. R. Civ. P. 8 requires more specificity from Mr. Mats at this time. The precise mechanism by which Mr. Mazin may have come into possession of the capital may be something that Mr. Mats may be able to learn only through discovery.[2] Accordingly, the Court declines to dismiss the third claim, sounding in civil theft asserted directly against Mr. Mazin.

The fourth claim, asserting "aiding and abetting" liability, is more problematic. As written, C.R.S. § 18-4-405 permits an action against only two people - the "taker" of the property and the person in actual possession of the property. Nothing in the statute suggests that relief may be obtained from any other person. Thus, on its face, the statute is not susceptible to a reading that would permit recovery on a theory that one aided and abetted a civil theft.

---

[2] And, of course, Mr. Mats remains subject to the requirements of Fed. R. Civ. P. 11(b), should discovery fail to reveal support for his contention that Mr. Mazin personally obtained actual possession of the actual capital contributions.

The Court understands Mr. Mats' argument to be that the statute should be extended to encompass recovery on such theory. In both *Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000), and *West*, 143 P.3d at 1040, the Colorado Supreme Court made clear that the statute should be construed *in pari materia* with the remainder of the Colorado Criminal Code. A separate provision in the Criminal Code, C.R.S. § 18-1-603, provides that an aider or abettor of a crime "is legally accountable as principal" for that crime. Thus, the argument goes, if an aider or abettor would be deemed to share the criminal liability of the thief for purposes of criminal law, it would stand to reason that the aider and abettor would also share the civil liability of the thief under C.R.S. § 18-4-405.

This Court does not read the existing precedent to endorse integration of all provisions of criminal law into this statute. Although cases like *Itin* and *West* encourage resort to the Criminal Code when interpreting the civil theft statute, they do so largely because the civil theft statute does not define terms like "theft, robbery, or burglary" found in C.R.S. § 18-4-405 itself. Thus, it is appropriate for courts to look to the Criminal Code for such definitions. *Itin*, 17 P.3d at 133 ("we define these terms in context with, and with regard to, their intended meaning within the statutory scheme"). But the Colorado courts have never considered the civil theft statute to incorporate <u>all</u> related criminal law concepts. Just the opposite is true. In *Itin*, the Colorado Supreme Court explained that it had not incorporated the Criminal Code's "beyond a reasonable doubt" standard, C.R.S. § 18-1-402, into claims brought under the civil theft statute and that those claims may be proven by the more relaxed civil "preponderance of the evidence" standard. 17 P.3d at 135 n. 9.

Cases such as *West* serve to caution this Court in interpreting the civil theft statute

broadly. In *West*, the plaintiff was swindled out of his vehicle by a thief who purported to purchase it with a check that was eventually discovered to be fraudulent. The thief later sold the vehicle to the unsuspecting defendant, and the plaintiff eventually located the car and sought to recover it from the defendant under the civil theft statute. The defendant, however, invoked section 2-403 of the Uniform Commercial Code, C.R.S § 4-2-403, claiming to be a good-faith purchaser for value. Considering the conflict between the two statutes, the Colorado Supreme Court concluded that, in the particular situation presented, the UCC result should control. Critical to the court's reasoning was the observation that the transaction between the plaintiff and the thief, although ultimately fraudulent, was facially voluntary. *Id.* at 1045. Noting that both the plaintiff and defendant were innocent parties, the court concluded that the plaintiff was "better positioned to take precautions to prevent loss than [the defendant]" – by insisting on dealing in cash, for example. *Id.* at 1045-46.

*West,* then, indicates that the civil theft statute, while serving a laudable public purpose, is not necessarily to be given the most expansive reading possible. This is sound policy. The statute entitles the victim of the theft to recover treble damages and mandatory attorney's fees, unless the possessor of the property is a good-faith holder of the property.[3] Such remedies are, as the Colorado Supreme Court has recognized, "primarily a punitive, rather than a remedial, purpose." *In re Marriage of Allen*, 724 P.2d 651, 656 (Colo. 1986). Because the statutory remedy is punitive in nature, this Court is reluctant to interpret the statute in a way that would

---

[3]It is not clear from Colorado law whether proof of good faith is an element of the plaintiff's claim or an affirmative defense to be proven by the defendant.

significantly expand its reach beyond its express terms.[4] The possible realm of individuals who could be said to have aided and abetted a theft, and the range of culpable conduct that might be encompassed by a broad reading of the statute, suggests to this Court that expansion of the statutory language should be undertaken by the legislature, not the courts.  In absence of some indication that the Colorado General Assembly intended to expand the scope of the civil theft statute beyond its express terms to apply to a person who aids and abets, the Court declines to do so.

Accordingly, the Court finds that the civil theft statute does not contemplate aiding and abetting liability, and thus, Mr. Mats' fourth claim is dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Mazin's Motion to Dismiss **(# 12)** is **GRANTED IN PART**, insofar as Mr. Mats' fourth claim for relief, sounding in aiding and abetting civil theft, is **DISMISSED** for failure to state a claim, and **DENIED IN PART**, insofar as the Court finds Mr. Mats' third claim, sounding in direct liability for civil theft, is pled sufficiently.

Dated this 6th day of August, 2012

**BY THE COURT:**

*/s/ Marcia S. Krieger*

---

[4] The statute at issue here is different from that considered in *FDIC v. First Interstate Bank of Denver, NA*, 937 F.Supp. 1461, 1470 (D. Colo. 1996), upon which Mr. Mats relies. There, the court read aiding and abetting liability into the civil component of the Colorado Organized Crime Control Act, C.R.S. § 18-17-104(3), in part because the statutory language prohibited persons from engaging in racketeering activity "directly or indirectly." *Id.* at 1471 ("the phrase 'directly or indirectly' reflects the Colorado General Assembly's intent to provide for secondary liability").  No similar language or intent appears in the civil theft statute.

                Marcia S. Krieger
                United States District Judge